Nabeha Koury *et al. vs.* David Sood *et al.*

DECEMBER 10, 1948.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This bill in equity was brought in behalf of the widow and heirs of Peter Koury against the Rhode Island Hospital Trust Company, hereinafter called the bank, and David Sood and Nicholas Elias, hereinafter referred to collectively as Sood: (1) to restrain the respondents from foreclosing certain mortgages executed by Peter Koury between 1918 and 1925; (2) to account for moneys had and received by the respondents in the care and management of the property covered by the mortgages by virtue of an assignment of rents made by Peter Koury; (3) to appoint a receiver to collect rents and moneys belonging to the complainants; (4) to discharge and deliver the mortgages and notes to the complainants if the respondents had received sufficient moneys to satisfy the mortgage indebtedness; and (5) to have the court determine the amount payable by them for a cancellation of the mortgages if the moneys received by the respondents did not satisfy such indebtedness. The bill also contained a prayer for such other and further relief as was proper in the circumstances.

The cause was heard in the superior court on bill, answers and proof, in the course of which hearing numerous exhibits were introduced in evidence by the respondents to account in detail for the moneys received and expended by them in managing the property. In a carefully prepared decision the trial justice found that by virtue of an assignment of rents, hereinafter referred to generally as the assignment, the bank and Sood were in effect mortgagees in possession with the duty to account to the mortgagor or his successors, these complainants; that there was no evidence

of mismanagement, overreaching, inaccuracy, fraud or misrepresentation by either respondent; that, with the exception of $640 expended by Sood for alterations in the nature of permanent improvements after the transfer of the mortgages and assignment to him, the respondents had in fact given to the complainants in open court a full, fair and accurate account of their management of the property under the assignment; that, as of January 27, 1947, there was due and owing on the mortgages the sum of $15,003.90; that upon the payment of such sum by the complainants to Sood within a period of one month from the entry of a decree, in accordance with the decision, the mortgages, notes and assignment were to be returned to the complainants; and that in the meantime Sood was enjoined from disposing of the mortgages and assignment and from instituting foreclosure proceedings under the mortgages during said period of one month. From a decree incorporating these findings the complainants duly appealed to this court.

It appears in evidence that in 1918 Peter Koury acquired certain premises, consisting of five stores and five tenements, in the city of Woonsocket. The land was in a poor location and at the time of the hearing the buildings were over sixty years old. Between 1918 and 1925 Peter Koury executed three mortgages in the usual form, including a power of sale upon any default on the mortgages, to the Mechanics Savings Bank of Woonsocket for $4,500, $3,000 and $2,000, respectively. In 1928 these mortgages passed by transfer to the Rhode Island Hospital Trust Company, one of the present respondents, when the Mechanics Savings Bank merged with the said trust company.

In 1932 Peter Koury, being considerably in arrears in the payment of taxes and interest, agreed orally with the bank to turn over to it all the rents from the mortgaged premises, which rents the bank was to apply in paying the necessary expenses. This arrangement continued for a period of about four years, during which time the returns made by Koury were always insufficient to cover the expenses. The

result was that the bank made up the deficiencies and charged him therewith. Finally, in February 1935, the bank, apparently believing that Koury was not turning over all the rents, demanded and secured from him a formal assignment of rents. Thereafter the bank managed the property until April 19, 1946 when, after notice to the complainants, it transferred the mortgages and assignment for $8,500 to Sood, who, in June 1946, started foreclosure proceedings on the third mortgage, whereupon the present proceedings were instituted.

In view of complainants' main contention, to which we will presently refer, it is necessary to mention in detail the language of the assignment. This instrument, dated February 18, 1935, recited the position of Peter Koury and the bank as mortgagor and mortgagee in the three mortgages hereinbefore mentioned, the existing default of the indebtedness, and the desire of Koury to avoid foreclosure. In consideration of the bank's promise to refrain from instituting foreclosure proceedings under the mortgages "for such period as it may see fit to do so," Koury assigned to the bank "its *successors* and *assigns*" the rents from the mortgaged premises "upon special trust," to collect and apply those rents to the payment of the principal and interest of the indebtedness secured by the mortgages and other indebtedness of Koury to the bank in connection therewith; to pay all charges for taxes and insurance; and to make payments for such repairs as the bank "shall consider necessary for the proper preservation and maintenance of said mortgaged property * * *." (italics ours)

The instrument further provided that if there was "no principal, interest, taxes, assessments or insurance premiums due *at the time* when any of said rent shall be collected, or if at any time a surplus of rents remains of the rent so collected after the payment of all principal, interest, taxes, assessments or insurance premiums *then due*, to hold and accumulate said rents and apply the same to the payment of such principal, interest, taxes, assessments, insurance

premiums, and payments for repairs which *become due* in the future as and when the same become due." (italics ours) The instrument then provided that the assignment would continue in force and effect until the full payment of all sums secured by the mortgages.

Peter Koury died intestate April 11, 1940, leaving a widow and eight children, all adults, who are the complainants here. Since the complainants Alfred, Charles and George Koury invoke the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, it becomes necessary to mention the termination of their respective terms of service, which were as follows: Alfred, July 15, 1943; Charles, December 24, 1945; and George, January 10, 1946.

The evidence is clear that during the entire period of the bank's management of the property under the assignment semiannual statements of all receipts and disbursements were rendered to Peter Koury from February 18, 1935 up to the date of his death in 1940, and thereafter to the complainants up to April 19, 1946; that until Peter Koury's death the bank also discussed with him from time to time matters concerning the property and informed him of the status of the indebtedness; and that after his decease similar accountings were received by the complainants who, excepting an occasion in 1943 when one of them inquired as to the amount due on the mortgages, never complained in any way respecting the management of the property by the bank or showed any concern about the mortgages.

The bank's accounting and that of Sood with reference to his management of the property were amply supported in open court by numerous exhibits. The complainants in their argument before us made no complaint as to the accuracy of the account thus taken, nor did they question the good faith or judgment of the respondents in the matter of expenditures in the management of the property. In their brief they argue generally that it was the bank's duty to secure a larger income from the property, but they

refer to no evidence in the record as to how this should have been accomplished; nor do they point out any specific instance showing want of proper care in managing the property or in handling the receipts therefrom.

Complainants' main contention, as we understand it, is that the instrument of February 18, 1935 from Peter Koury to the bank was not a rent assignment as additional collateral for the indebtedness due and owing on the mortgages, but that in its legal effect such instrument created a trust for the benefit of Peter Koury with the bank as trustee, the trust to continue at least until the indebtedness under the mortgages was fully satisfied; and that the bank, disregarding its duty as trustee under such a trust, unlawfully transferred the mortgages and assignment to Sood, wherefore the attempted foreclosure by the latter was without warrant of law.

The complainants in effect contend that by the assignment the bank assumed the obligation never to foreclose the mortgages. The precarious situation in which Peter Koury found himself with reference to the mortgages in 1935 and the express language of the instrument itself, which we have already mentioned, obviously contradict complainants' contention. Furthermore, the bill in this cause was not framed on the theory now urged and the specific relief therein sought is plainly inconsistent with such a claim. The fact that the instrument assigned the rents "upon special trust" for certain specified purposes and provided for an accumulation of excess rent to meet future contingencies did not alter the true intent and purpose of the parties in executing that instrument. When fairly read in the light of the then existing circumstances it cannot reasonably be construed other than as a rent assignment from mortgagor to mortgagee as additional security in protection of the indebtedness on the mortgages therein described. There is nothing in the instrument even remotely indicating that such indebtedness must be satisfied exclusively from the rents and that the bank precluded itself

492

from foreclosing the mortgages if its interest thereunder required such action. As a matter of fact, the bank expressly undertook to refrain from instituting foreclosure proceedings *only* for such period as it saw fit to do so.

By virtue of the assignment the bank was thereafter, for all practical purposes, in possession of the premises and receiving the rents by consent of the mortgagor. In other words, the bank's position following the assignment was that of a mortgagee in possession at common law, with the obligation to account to the mortgagor for its management of the property as a quasi trustee. Such a situation, however, does not give rise to an express "trust" and make the bank a "trustee" in the strict meaning of those terms. See *Reynolds* v. *Hennessy,* 15 R. I. 215, 217. Although the law of mortgages and that of trusts frequently present situations somewhat similar in character, the fundamental principles which distinguish one from the other are so well fixed that confusion will ordinarily be avoided if the circumstances in each particular case are kept in mind and carefully considered. 1 Scott on Trusts, §1.9. In the instant cause we find no merit in complainants' contention that as a result of the instrument of 1935, herein called the assignment, the bank changed its position as a mortgagee to that of a trustee.

As a corollary to such contention the complainants urge that the bank's transfer of the assignment to Sood was void, as a trustee cannot delegate the trust. Since we have already held that in this cause there was no trust within the meaning of that term in the law of trusts, this contention is clearly untenable and therefore requires no further discussion.

It is now well established that a mortgage may be transferred either before or after entry by the mortgagee. 2 Jones on Mortgages (8th ed.) §1002; 41 C.J. §581. Whether in the ordinary case the transferee of a mortgagee in possession can continue to collect and apply the rents, which the complainants contend he cannot do, is a ques-

tion that is not before us. Here the rent assignment ran expressly to the bank, "its successors and assigns." The complainants argue that the word "assigns" in the quoted phrase is without controlling force and cite *Swarts* v. *Narragansett Electric Lighting Co.*, 26 R. I. 436, as authority for such proposition. Even a cursory examination of that case shows that it is clearly not in point. Whatever may be the rule otherwise, it is clear to us that when the bank transferred the mortgages and assignment to Sood the latter succeeded to all the rights of the former under those instruments by express authority of the mortgagor.

The complainants were undoubtedly entitled to an accounting from the respondents for their care and management of the estate as a mortgagee in possession. Speaking generally, in those respects such a mortgagee is ordinarily held to the exercise of the care and diligence that a prudent owner would exercise under the same or similar circumstances. 2 Jones on Mortgages (8th ed.) §1440. Except for waste, and there is no evidence to support any such claim in this cause, the standard governing an accounting by a mortgagee in possession is set forth in general laws 1938, chapter 442, §2. An account in accordance with this statute was given in the superior court. From our examination of the evidence we cannot say that the trial justice was clearly wrong in holding that the respondents cared for and managed the property, which was old and in the nature of a wasting asset, with the care and diligence that the mortgagor could or would have exercised in the same circumstances.

While a mortgagee in possession is bound to make all reasonable and necessary repairs, and is responsible for any loss or damage occasioned by his willful default or gross neglect in this regard, he is not bound to repair against the natural effects of deterioration and decay from time. See *Chapman* v. *Cooney*, 25 R. I. 657. It is significant that although Peter Koury in his lifetime and one of his sons after his death occupied a store in the

494

premises, neither one ever complained as to the care of the property or as to the rents that the bank and Sood respectively received therefrom. No item in the accounting which the respondents gave in open court, supported as it was by innumerable vouchers and other exhibits, was questioned by the complainants. In this situation their claim to another accounting is without merit.

Complainants further contend that because of the military service of Alfred, Charles and George Koury, the bank and Sood were precluded by the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, from instituting foreclosure proceedings under the mortgages. We doubt whether the act is applicable at all in the circumstances of record now before us. But assuming without deciding that it does apply, the above-named complainants, who have no personal obligation or liability under the mortgages, are clearly beyond the provisions of Tit. 50 U.S.C.A. App. §590, art. VII (1) (a), upon which they rely. The express purpose of this part of the act is to grant relief, in the discretion of the court, if application is made therefor within six months of the termination of military service, to a person in the armed forces who was under "an obligation payable under its terms in installments under a contract for the purchase of real estate, or secured by a mortgage or other instrument in the nature of a mortgage upon real estate * * *." Obviously this provision is inapplicable in the circumstances of the instant cause.

Furthermore, the complainants have apparently overlooked the provisions of Tit. 50 U.S.C.A. App. §532, art. III (1) (2) (3), which, if applicable at all, declare a foreclosure sale based upon "obligations secured by mortgage" void if made within three months after the termination of military service. The first advertisement of foreclosure in this cause is dated June 5, 1946 and the complainant George Koury, the last of the three brothers to terminate his military service, was discharged January 10, 1946. Here

again we cannot see how the complainants hereinbefore mentioned can derive any advantage under the provisions of the act.

Upon a careful examination of the entire record we are of the opinion that the decree appealed from should be affirmed with modification as to the time of payment of the sum of $15,003.90, with additional interest up to the date of said payment. The decree, which was entered March 24, 1947, gives to the complainants a period of one month from and after that date to make such payment, the respondents being enjoined during said period from instituting foreclosure proceedings. As the time thus fixed has expired, the decree should be modified by fixing a new date, in the discretion of the trial justice, within which payment of the aforesaid sum shall be made, during which period the respondents shall be enjoined from instituting foreclosure proceedings.

The complainants' appeal is denied and dismissed, the decree appealed from as above modified is affirmed, and the cause is remanded to the superior court for further proceedings.

*Jacob J. Alprin, Frank H. Bellin,* for complainants.

*Samuel H. Brenner* for respondents David Sood and Nicholas Elias; *Tillinghast, Collins & Tanner, Russell P. Jones, Westcote H. Chesebrough* for respondent Rhode Island Hospital Trust Company.